(C. D. 1956)

SANDOZ CHEMICAL WORKS, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 15, 1958)

*Eugene R. Pickrell* (*Richard F. Weeks* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The involved importation, known as "Plastine," was classified by the collector under paragraph 24 of the Tariff Act of 1930 at the rate of 20 cents per pound and 25 per centum ad valorem as an alcoholic compound, not specially provided for, containing less than 20 per centum of alcohol. Plaintiff claims the merchandise properly classifiable under paragraph 5 of the said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, at the rate of 12½ per centum ad valorem as a chemical compound. A further claim was made for classification of the merchandise under paragraph 11 of the tariff act as a synthetic resin, not specially provided for, at the rate of 4 cents per pound and 30 per centum ad valorem. This claim, however, was not pressed at the trial, and no proof was offered in support thereof.

It was stipulated between the respective parties that the imported "Plastine" contains methyl alcohol, but less than 20 per centum (R. 8–10).

The deposition of Dr. Ernst Matter, plant chemist in charge of production of "Plastine" at the plant of Sandoz, Ltd., Basle, Switzerland, was received in evidence as plaintiff's exhibit 1. Dr. Matter described the method of manufacture substantially as follows: Plastine is produced by treating aqueous formaldehyde solution with urea and a small amount of magnesia, which is then filtered and crystallized. The formaldehyde used contains "10.1–12.0% Methyl Alcohol" (R. 15).

Hans Rudolf Vollenweider, manager of the Textile Chemicals Plant of the plaintiff firm, testified that "Plastine" had been produced under his supervision. He corroborated the testimony of Dr. Matter respecting the manufacture of "Plastine" adding that: The imported product is used in textiles to prevent wrinkling and, further, that "The methyl alcohol comes into the Plastine" because the methyl alcohol is in the formaldehyde and "Plastine" contains about three-quarters of formaldehyde and one-quarter urea (R. 28–29). The function of the methyl alcohol in the formaldehyde is to prevent polymerization of the formaldehyde during storage and to keep it from becoming turbid, thus stabilizing the formaldehyde and preventing the formation of undesirable precipitates (R. 33–36, 46).

This witness further testified that while there is a chemical reaction between the urea and the formaldehyde, to the best of his knowledge, the methyl alcohol does not enter into this chemical reaction (R. 43).

On cross-examination, Mr. Vollenweider testified that the methyl alcohol does not inhibit or slow down the polymerization of the reac-

tion between the urea and the formaldehyde and that it does not serve any function at all in the finished product (R. 45).

Cyril S. Kimball, chemist and vice president of Foster D. Snell, Inc., consulting chemist and chemical engineer, called as a witness by the plaintiff, testified that he had had experience with the manufacture of various products mentioned in paragraph 24 of the tariff act, having made analyses and conducted experimental work in the manufacture of all of these products, stating that, in all of these substances, he had found ethyl alcohol. Further, that all of such products contained ethyl alcohol. The witness further testified that he also had had experience with other alcohols, including methy alcohol; that methyl alcohol or wood alcohol is derived from wood distillation and that ethyl alcohol is manufactured either from molasses or grains, cereal grains, in one form or another; that methyl alcohol is highly poisonous, whereas ethyl alcohol is not nearly as toxic, and is potable, i. e., suited for or prepared for drinking.

On cross-examination, Mr. Kimball testified that he had heard of articles consisting of a vegetable or mineral object immersed or placed in, or saturated with, alcohol (except perfumery and spirit varnishes) where the alcohol used was methyl alcohol, but stated that, in such case, it was simply for the purpose of preserving the form and character of the specimens (R. 56–57).

The Government's first witness was Richard B. Greene, bachelor of science, Purdue University, and doctor of philosophy, Penn State College, presently employed by the Barrett Division of Allied Chemical & Dye Corp., New York, as "Coordinator of plastics and resins department." He stated that he had personally manufactured or supervised the manufacture of "Plastine" or "urea formaldehyde resin" and that in the manufacture of such substance he had used urea and low methyl formaldehyde, the specification for the latter in the reaction being about 1 per centum (R. 79). In agreeing with the chemical analysis of the product at bar, as disclosed in the deposition of plaintiff's witness Matter, Mr. Greene stated that the 7.6 to 9 per centum methyl alcohol contained therein served a useful purpose in that it added to the storage life of the material. The witness concluded this phase of his testimony by stating that, in the manufacture of the product such as that imported, he used formaldehyde with approximately 1 per centum methanol (methyl or wood alcohol) and then added further methyl alcohol to gain additional stability of the final product for the purpose of inhibiting polymerization (R. 83).

On cross-examination, Mr. Greene stated that formaldehyde contains a "regulated" percent of methyl alcohol to prevent the precipitation of the polymers, "similar to para-formaldehyde" and agreed that the lower the temperature, the more methyl alcohol would have to be added to the formaldehyde to prevent precipitation and to inhibit polymerization (R. 83–85).

Plaintiff's claim that the imported "Plastine" is not classifiable under paragraph 24 of the tariff act is apparently based solely on the contention that the language "alcohol" or "alcoholic" referred to therein with respect to the pertinent products is restricted to "ethyl" alcohol, and that, accordingly, the importation at bar, containing "methyl" alcohol, is not dutiable as assessed. The issue herein, therefore, is one of law, namely, whether alcoholic products containing alcohol, other than ethyl alcohol, are provided for under paragraph 24 of the act, or whether the provisions of said paragraph are restricted to such alcoholic products as contain only ethyl alcohol.

In determining the question before us, reference to the legislative history of paragraph 24 here in issue appears pertinent. The Tariff Act of July 28, 1866, provided for: "compounds or preparations of which distilled spirits is a component part of chief value." See *United States* v. *Downer & Co.*, 175 Fed. Rep. 33, 36. The Tariff Act of 1883 provided for alcoholic compounds; fruit ethers, oils, or essences; and medicinal preparations in paragraphs 103, 114, and 118, respectively. Provisions covering such products were substantially the same up to and including the Tariff Act of 1909. The Tariff Act of 1913, grouped, in paragraph 16 therein, the following: "Chemical and medicinal compounds and preparations, * * * distilled oils, essential oils, expressed oils, rendered oils, greases, ethers, flavoring and other extracts and fruit essences, * * * when containing alcohol," and vegetable or mineral objects immersed in alcohol (except perfumery and spirit varnishes) and "all alcoholic compounds not specially provided for."

Certain decisions under predecessor tariff acts have involved the question of classification of products containing alcohol. In *Merck & Co.* v. *United States*, Synopsis of Decisions 1892, page 1008, G. A. 1683, T. D. 13303, it was held, in effect, that fruit ethers are produced from ethyl alcohol. The ethers named in the present paragraph 24 are fruit esters, oils, and essences (Summary of Tariff Information, 1929, page 120). In *American Express Co.* v. *United States*, Synopsis of Decisions 1896, T. D. 17406, fruit ethers were held dutiable under paragraph 17, Tariff Act of 1894, predecessor to paragraph 24 of the present act. In *Distillers Co.* v. *United States*, 6 Cust. Ct. 180, C. D. 456, certain flavoring extract containing grain alcohol was held dutiable under paragraph 24 of the present act as "flavoring extracts." It appears that flavoring extracts contain only ethyl alcohol. Webster's New International Dictionary, second edition, at page 964:

**flavoring extract.** A solution in ethyl alcohol * * *.

Still wines were held dutiable under predecessor paragraph 74 of the Tariff Act of 1890 in *Cushman Bros.* v. *United States*, 2 Treas. Dec. 613, T. D. 21717.

It, accordingly, appears from the above references that the ethers, medicinal preparations, and alcoholic compounds provided for in the predecessor paragraphs of the Tariff Acts of 1883, 1890, 1894, 1897, and 1909 were such as contained ethyl alcohol.

Paragraph 24 in issue also provides for distilled or essential oils, if containing alcohol. Paragraph 58 of the present act provides *eo nomine* for certain distilled or essential oils, excepting such articles as are compounded with or contain alcohol. In *Bisbee Linseed Co.* v. *United States*, 19 C. C. P. A. (Customs) 101, T. D. 45242, the court adopted the view advanced by the appellant therein that "essential or distilled oils" refer to one class of oils only, to wit, "the well-known class of essential oils which are for the most part produced by distillation," and, in discussing such products, held, in effect, that such oils are only those which possess the properties of taste and odor of the plants from which they are derived. It seems apparent that paragraph 24 of the present act, in providing for distilled or essential oils, when containing alcohol, likewise contemplates oils having the characteristics above referred to, and which, like the flavoring extracts, fruit ethers, and medicinal preparations provided for therein, contain ethyl alcohol, a suitable substance for their intended purpose, and that such oils are not such as contain methyl or wood alcohol which the record discloses is highly poisonous.

Respecting the common acceptation of the term "alcohol," the Encyclopaedia Britannica, 14th edition, volume 1, page 539, states:

**ALCOHOL,** * * *

The word is commonly applied to one particular member of the class (ethyl alcohol or ethanol) having the formula $C_2H_6O$. * * *

In the Dictionary of Tariff Information, issued by the United States Tariff Commission, 1924, we find, at page 27:

**Methyl or wood alcohol, or methanol,** is one of the primary products of the hardwood-distillation industry. * * * The largest uses of methanol are in the manufacture of formaldehyde * * *.

In "Chemicals of Commerce," second edition, by Snell & Snell, at page 220, the following information is noted:

The most common alcohol, ethyl alcohol, is next in importance to water as a solvent and occupies the same position in organic chemistry as water does in inorganic chemistry. *When only alcohol is specified ethyl alcohol is meant.* * * * [Emphasis supplied.]

* * * * * * *

*Methanol, methyl alcohol, wood alcohol,* or *wood spirit,* $CH_3OH$, is the simplest possible representative of the alcohol class, and is miscible with water, alcohol, or ether. * * * [Italics quoted.]

In notes on tariff revision, prepared for the use of the Committee on Ways and Means, House of Representatives, 1909, relative to "Ethers," at page 32, it is stated:

General Information

Ether is a volatile liquid prepared from ethyl alcohol by interaction with sulphuric acid. When the term ether is used without qualification, diethyl or sulphuric ether is meant, *just as ethyl alcohol is understood when alcohol is mentioned without qualification.* [Italics ours.]

To the same effect, see Encyclopedia of Chemical Technology, by Kirk & Othmer, volume 1, page 252, and Van Nostrand's Scientific Encyclopedia, second edition, at page 44.

Defendant, in its brief, directs our attention to *F. W. Myers & Co., Inc.* v. *United States*, 20 Cust. Ct. 152, C. D. 1100, as authority for its contention that paragraph 24 of the Tariff Act of 1930 embraces all alcoholic compounds, whether containing therein ethyl alcohol or other kinds or types of alcohol. In discussing the classification of certain lacquer reducer or thinner containing amyl alcohol, which was classified under paragraph 24 of the act here in question, the court, page 154, stated:

Whether it is amyl alcohol, or one of its isomeric forms, *is immaterial.* The provisions of paragraph 24, *supra*, contemplate chemical compounds or mixtures thereof containing alcohol, *without regard to any particular kind or type of alcohol.* It is of interest to observe that paragraph 4 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 4), although it is not related to the present issue, provides for "alcohol," the generic term, and then lists different kinds of alcohol in this manner: "Alcohol: Amyl, butyl, hexyl, and propyl, all the foregoing whether primary, secondary, or tertiary." This is mentioned to suggest that if Congress intended to limit the chemical compounds and mixtures provided for in paragraph 30 [*sic*], *supra*, to those containing alcohol of some particular kind or grade, they would have said so as they did in paragraph 4. [Italics supplied.]

For the reasons expressed in the present decision, however, we do not believe the expression of the court in the *Myers* case, *supra*, as above indicated, is a correct interpretation as to the kind of alcohol contemplated as a constituent of the products provided for under paragraph 24.

The conclusion that paragraph 24 of the Tariff Act of 1930 with respect to the alcoholic substances and "alcoholic compounds" provided for therein contemplates only such as contain ethyl alcohol, is consonant with the manifest intention of Congress of taxing ethyl alcohol at high rates, as indicated by prior tariff acts and the present provisions relating to such substances. In Tariff Information Surveys, Tariff Act of 1913, paragraph 16, page 53, under the heading "Alcoholic Preparations," the following information is given:

The purpose of this paragraph is to impose higher import duties on all chemical and medicinal compounds and preparations containing alcohol than on those not containing alcohol to compensate for the fact domestic manufacturers of such preparations must pay a heavy internal revenue tax on alcohol.

To like effect, was the information presented to Congress in the preparation of the 1922 and 1930 tariff acts. Similarly, in the Sum-

maries of Tariff Information, 1948 edition, volume 1, relative to paragraph 24 of the Tariff Act of 1930, at page 30, it is stated:

Until 1935 the specific rates of duty provided in the Tariff Act of 1930 on imported flavoring extracts containing alcohol were more than compensatory for the internal revenue tax on alcohol paid by domestic extract producers. * * * Reductions in the import duty rates made in 1935 and 1936 by the trade agreements * * * brought the specific duties into line with the internal revenue tax on alcohol which was in effect at that time. Later the internal revenue tax on alcohol was increased, and now the domestic producers of flavoring preparations pay more * * * on the spirits they use as a raw material * * *.

· The high rates of duty prescribed by paragraph 24 of the Tariff Act of 1930 on the products covered therein, when containing "alcohol," including all alcoholic compounds, express the legislative intent that such rates be maintained on ethyl alcohol, when that substance is imported in forms differing from plain distilled spirits for beverage purposes.

Accordingly, it appears, from the congressional intent of taxing ethyl alcohol at high rates, that the rates imposed on the products provided for in paragraph 24 of the act are applicable to such substances which contain ethyl alcohol, and that the designation of the terms "alcohol" or "alcoholic" in the paragraph, without qualification, embraces only ethyl alcohol. This, together with the meaning of the terms as understood in the trade and within the common acceptation, as heretofore indicated, persuades us that the products therein provided for, when containing alcohol, are dutiable at the applicable rates only when the alcoholic constituent is ethyl alcohol. That factor not being present in the composition of the merchandise at bar, the importation is not covered by the provisions of paragraph 24 of the tariff act, and, accordingly, is not classifiable for duty under said paragraph. The record discloses that the involved product is an aqueous formaldehyde solution treated with urea and a small amount of magnesia. It is thus embraced within the provisions of paragraph 5 of the Tariff Act of 1930 for "All chemical elements, all chemical salts and compounds, * * * and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for," and is properly classifiable under said paragraph, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, at the rate of 12½ per centum ad valorem, as claimed. The protest is sustained. Judgment will issue accordingly.